1

2

3

4

5

6   UNITED STATES DISTRICT COURT

7   EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | 1:09-CV-02127-OWW-SMS |
| Petitioner, | MEMORANDUM DECISION RE: RESPONDENT Z FOODS, INC.'S MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S ORDER (Doc. 38.) |
| v. | |
| Z FOODS, INC. dba ZORIA FARMS, RUSTIC CANYON FONTIS PARTNERS, and FRANCISCO GUERRA, | |
| Respondents. | |

### I.   INTRODUCTION.

This matter is before the Court on Respondent Z Foods, Inc.'s motion for reconsideration of the Magistrate Judge's October 28, 2010 Order enforcing a subpoena in an investigative context.  The Order found that Respondent and its counsel impeded the EEOC's investigation into sexual harassment at Z Foods; required Respondent and its counsel not to interfere with the EEOC's investigation into alleged misconduct at Z Foods; ruled that Zoria personnel and legal counsel were not to attend the deposition of Francisco Guerra, a supervisor at Z Foods; and Mr. Guerra was to complete his subpoenaed testimony at the EEOC's Fresno offices.

1

1

## II.  **BACKGROUND**.

2        The procedural and factual background are summarized in the

3  Magistrate Judge's previous Memorandum Decisions in this case,

4  filed on February 25 and October 28, 2010, in brief:  The Equal

5  Employment Opportunity Commission ("EEOC") filed an application

6  for an order to show cause why subpoena should not be enforced on

7  December 7, 2009.  (Doc. 1.)  The EEOC's motion was limited to the

8  enforcement of a subpoena in an administrative matter.[1]  As of

9  February 22, 2011, no complaint has been filed.

10       The dispute arises out of the EEOC's investigation into an

11 alleged pattern and practice of harassment against a class of women

12 at Z Foods.    The EEOC claims it received fourteen charges of

13 discrimination *generally* against Z Foods from January 26, 2008 to

14 April 22, 2009.   The EEOC charges allegedly share a common theme

15 of preferential treatment toward younger women, "quid pro quo"

16 sexual harassment and sexual misconduct (assault).   As a result of

17 these allegations, the EEOC conducted an on-site investigation and

18 interviewed Francisco Guerra, an alleged sexual harasser and

19 supervisor at Z Foods.

20       The EEOC first interviewed Mr. Guerra, represented by counsel,

21 on September 2, 2009. According to the EEOC, Mr. Guerra's counsel,

22 Mr. Sagaser, did not allow Mr. Guerra to answer questions

23 concerning subject matter/individuals not specifically enumerated

24 in the EEOC charges.  Other questions were not answered on the

25 basis of Mr. Guerra's "privacy rights." Melissa Barrios, Director

26 _____

27        [1] Defendant Rustic Canyon Fontis Partners is not a party to
   this subpoena dispute, which is limited to Respondent Z Foods and
28 the EEOC.

**2**

of the EEOC's Fresno office, summarizes the September 2, 2009 interview - and the conflict between the EEOC counsel and Mr. Sagaser - as follows:

> On the first day of Mr. Guerra's interview, at approximately 1:30 pm on September 2, 2009, Maria Marquez, Federal Investigator and I inquired about Mr. Guerra's interactions at and off of the work site with a Charging Party. As there are allegations of a pattern and practice of harassment against a class of women, however, we continued various efforts to ask about Guerra's interactions with an employee by the name of Elizabeth Ceballos and made efforts to explore this regarding other women. However, Respondent's Attorney Howard Sagaser immediately ended my inquiry stating that he would not allow questions regarding female employees not named in any charge. He added that any such inquiries were too broad and invaded the witness' privacy.

> During the interview, as a defense to allegations of harassment, Guerra declared that he is married. Because the EEOC is aware that his wife also works for Zoria and may have information relevant to the claims under investigation, I asked him for his wife's name. Guerra refused asserting privacy. We at no time discussed Guerra and his wife's private life outside of work or attempted to ask about their marital intimacy. Further in the day, we attempted to ask Mr. Guerra about a store near the work site where employees are known to gather after work. Without my questioning or prompting, Guerra informed me that he has never had a romantic relationship with any employee of the market. Curiously, we had not asked anything about that. Sagasar quickly impeded further questions on this issue asserting that he would be seeking a protective order. In said store, however, a female that has been reported to the EEOC as a prior Zoria employee, working under Guerra, is believed to be a current employee of said store. Given the allegations of sexual harassment in the charges of discrimination, the EEOC wishes to inquire about Guerra's interactions with said female employee and any other female employees. Unfortunately, Sagasar has refused to allow the EEOC access to this central information from an alleged harasser.

(Doc. 17 at ¶ 3.)

3

1    Mr. Guerra's interview continued on September 3, 2009.[2]
2    According to the EEOC, Mr. Sagaser again instructed Mr. Guerra to
3    invoke his privacy rights and refuse to answer questions concerning
4    his alleged relationships with current or female employees at Z
5    Foods.   After two hours of questioning, the EEOC ended the
6    interview because "Guerra [was not allowed] to answer centrally
7    needed information about Guerra's interaction with female employees
8    beyond one Charging Party."  (Id. at ¶ 3.)

9    At the conclusion of the September 3, 2009 interview, the EEOC
10   served a subpoena on Mr. Guerra seeking, *inter alia*, information
11   related to Mr. Guerra's sexual conduct/activity with current or
12   former employees at Z Foods.  The subpoena required his attendance
13   at the EEOC's office in Fresno on September 11, 2009.

14   In the interim the parties exchanged correspondence concerning
15   the validity of Mr. Sagaser's objections and the scope of the
16   EEOC's investigatory powers.  By September 9, 2009 letter, the EEOC

---

18   [2] **According to the EEOC, the interview conditions did not
19   improve on September 3, 2009:**

20       On September 3, 2009, I hoped to complete Guerra's
21       testimony.  Despite scheduling to begin the interview at
         about 2:00 p.m., lengthy disagreements with Howard
22       Sagasar caused the interview to not begin until 3:29
         p.m.  It ended only two hours later at about 5:20 p.m.
23       Given Sagasar's refusal to allow Guerra to answer
24       centrally needed information about Guerra's interaction
         with female employees beyond one Charging Party and my
25       very limited remaining time to interview Guerra that
         afternoon, I postponed sexual harassment questions
26       related to conduct to an interview session that would be
27       conducted pursuant to a testimony subpoena.

28   (Id. at ¶ 4.)

**4**

stated that it "categorically disagreed" with Mr. Sagaser's position that Mr. Guerra is not required to "answer questions related to whether he has engaged in sexual conduct with employees, regardless of whether the conduct occurred on the premises of the worksite, or later away from the worksite." Based on the costs associated with the September 11, 2009 interview, the EEOC requested that Mr. Sagaser "verify whether you will permit the EEOC to continue this area of inquiry, and whether you will permit the your client to answer the questions without instructions from you to the contrary." The EEOC also expressed concern about possible witness intimidation by Z Foods employees.

On September 10, 2009, Mr. Sagaser responded that the EEOC has "broad investigatory powers [but] those powers are not unlimited." According to Mr. Sagaser, questions concerning Mr. Guerra's possible sexual encounter with a grocery store employee were "outside the bounds of a proper investigation." He then requested an advance copy of interview questions because, absent an advance review, it is "impossible [] to determine whether [] the questions are appropriate or invade the individual's right to privacy, including his or her sexual history or involve privileged communication."

The EEOC cancelled the interview on September 10, 2009. The EEOC claimed that it was "well within its authority to ask Mr. Guerra and others questions regarding sexual conduct, on or off premises, that affects current or former employees, particularly due to the serious nature of the allegations." According to the EEOC, it was "unable to complete Mr. Guerra's interview due, in part, to [Mr. Sagaser's] continued objections keeping [Mr. Guerra]

from answering questions" relevant to its investigation of sexual harassment at Z Foods.  The EEOC declined to produce the requested interview questions and referred the subpoena to its legal division.

On December 7, 2009, the EEOC sought enforcement of the subpoena by the District Court.  The EEOC's opening brief explains the basis and grounds for judicial enforcement of the subpoena:

> The subpoena was properly issued. It was issued within the agency's authority and complies with procedural requirements for such subpoenas. The subpoena sought information from a person accused of harassment, is a potential witness of discrimination and is familiar, in his management position, with Zoria's policies and procedures regarding employment discrimination. Such information is necessary to assess the validity of the complainants' employment discrimination allegations as well as the viability of Respondent's arguments against liability.

> Respondent failed to file an administrative petition to revoke waiving any objections of privacy or otherwise that are not based on constitutional grounds. Further, Title VII confidentiality safeguards adequately protect privacy interests. Further, because of federal preemption of state law, federal courts have consistently ruled that any alleged California based confidentiality rights do not provide a basis for declining to comply with the EEOC's investigative subpoena under Title VII [...]

> Despite the EEOC's clear authority to carry out the subpoena, Respondent Zoria's counsel impeded the EEOC's ability to interview Mr. Guerra and is expected to similarly interfere with other witness interviews and threaten intimidate them against providing their complete account of any conduct that may shed light on the allegations that the EEOC is investigating. His presence will hamper the EEOC's ability to investigate the charges of discrimination against Zoria, encourage Mr. Guerra against cooperating with the EEOC and will chill other witnesses from voluntarily cooperating with the EEOC's investigation or complaining about employment discrimination. This interference is hindering the EEOC's ability to investigate fourteen (14) charges of discrimination against Zoria. The conduct of Respondent Zoria's counsel makes it clear that even willing witnesses will not be able to speak with the EEOC for fear that Respondent Zoria might perceive their

6

**communications as violating privacy concerns. In fact, the presence of any Respondent Zoria representatives at witness interviews is suspect.**

(Doc. 3 at 3:21-4:23.)

Z Foods opposed the order to show cause on February 2, 2010, arguing that the EEOC failed to demonstrate a proper basis for enforcement.

The EEOC's application was granted in part and denied in part on February 25, 2010.   The Magistrate Judge determined that Respondent and its counsel impeded the EEOC's investigation into sexual harassment at Z Foods;  required Respondent and its counsel not to interfere with the EEOC's investigation into alleged misconduct at Z Foods; ordered Mr. Guerra to complete his subpoenaed testimony at the EEOC's Fresno offices; and barred Z Foods personnel and legal counsel from intimidating any witness cooperating with the EEOC.   The EEOC's request for costs was denied.

Z Foods filed a motion for reconsideration of the Order on February 25, 2010.

On October 28, 2010, the Magistrate Judge amended the February 25, 2010 Order to resolve any uncertainty or ambiguity concerning the impact and review of Z Foods' original opposition, filed on February 2, 2010 under the heading "Answer to Complaint."[3]  In the Amended Order, the Magistrate Judge analyzed Z Foods' opposition and supporting documents and determined that they did not control the analysis.  The Amended Order reaffirmed the conclusions reached

---

[3] It is undisputed that no complaint has been filed by the EEOC.

1    in the February 25, 2010 Order.  The EEOC's application was granted

2    in part and denied in part.

3        The instant motion for reconsideration of the October 28, 2010

4    Order was filed on November 10, 2010.  The EEOC's opposition was

5    filed on November 22, 2010.  Oral argument was held on January 24,

6    2011.  The motion is now submitted for decision.

7

8                    III.  **LEGAL STANDARD**.

9        Motions to reconsider are committed to the discretion of the

10    trial court.  *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983)

11    (en banc); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C.

12    Cir. 1987).  To succeed, a party must set forth facts or law of a

13    strongly convincing nature to induce the court to reverse its prior

14    decision.  *See, e.g., Kern-Tulare Water Dist. v. City of*

15    *Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986), aff'd in part

16    and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).

17    When filing a motion for reconsideration, Local Rule 78-230(j)

18    requires a party to show the "new or different facts or

19    circumstances claimed to exist which did not exist or were not

20    shown upon such prior motion, or what other grounds exist for the

21    motion."  The court reviews a motion to reconsider a Magistrate

22    Judge's ruling under the "clearly erroneous or contrary to law"

23    standard set forth in 28 U.S.C. § 636(b)(1)(A);  Fed. R. Civ. P.

24    72(a).  The Court may only set aside those portions of the

25    Magistrate Judge's order that are either clearly erroneous or

26    contrary to law.  Fed. R. Civ. P. 72(a); *see also Grimes v. City*

27    *and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

28

1  **IV. DISCUSSION.**

2  **"The scope of the judicial inquiry in an EEOC or any other**

3  **agency subpoena enforcement proceeding is quite narrow." *EEOC v.***

4  ***Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001)**

5  **(quoting *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428**

6  **(9th Cir. 1983) (en banc), abrogated on other grounds by *Gilmer v.***

7  ***Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114**

8  **L.Ed.2d 26 (1991)); *accord NLRB v. Am. Med. Response, Inc.*, 438**

9  **F.3d 188, 193 (2d Cir. 2006)(the district court's "role in a**

10  **proceeding to enforce an administrative subpoena is extremely**

11  **limited.").**

12  **In the context of this dispute, the critical questions are:**

13  **"(1) whether Congress has granted the authority to investigate; (2)**

14  **whether procedural requirements have been followed; and (3) whether**

15  **the evidence is relevant and material to the investigation."**

16  ***Children's Hosp.*, 719 F.2d at 1428.  "If these factors are shown by**

17  **the agency, the subpoena should be enforced unless the party being**

18  **investigated proves the inquiry is unreasonable because it is**

19  **overbroad or unduly burdensome."  *Id*.**

20  **Respondents challenge only the third prong, which addresses**

21  **relevance and materiality.  "Since the enactment of Title VII,**

22  **courts have generously construed the term 'relevant' and have**

23  **afforded the Commission access to virtually any material that might**

24  **cast light on the allegations against the employer." *EEOC v. Shell***

25  ***Oil Co.*, 466 U.S. 54, 68-69 (1984).  The Ninth Circuit recently**

26  **reviewed the standards by which a district court must assess**

27  **relevancy:**

28  **[C]ourts must enforce administrative subpoenas unless**

**9**

the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency [...] Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance [...] Moreover, the relevancy requirement is 'not especially constraining' [....]

*EEOC v. Fed. Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009) (citations omitted).

The administrative subpoena may not, however, "be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). There must be a realistic expectation that something may be discovered that pertains to the investigation. *See EEOC v. United Air Lines, Inc.*, 287 F.3d 643 (7th Cir. 2002) (citing *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir. 1968)).

If the EEOC meets this burden, the burden shifts to the respondent to prove that the subpoena is overbroad or unduly burdensome.[4] That burden is difficult to meet. *See EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) ("[T]he employer "carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad."); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986) ("[T]he burden of proving that an administrative subpoena is unduly burdensome is not easily met."); *cf. EEOC v. United Parcel Serv. Inc.,* 587 F.3d 136, 139 (2d

---

[4] Under Title VII, the EEOC is required to investigate charges of discrimination to determine whether there is reasonable cause to believe that an employer is engaged in an unlawful employment practice, see 42 U.S.C. § 2000e-5(b), and may issue subpoenas in connection with its investigation, id. § 2000e-9. It is entitled to "any evidence of any person being investigated [...] that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." id. § 2000e-8(a).

Cir. 2009) (per curiam) (enforcing EEOC subpoena seeking information on how employer applied appearance guidelines nationwide in EEOC investigation of two complaints of religious discrimination).  Compliance with a subpoena is excused if it "threatens to unduly disrupt or seriously hinder normal operations of a business." *Maryland Cup Corp.*, 785 F.2d at 479.

The substance of Respondent's argument is that the administrative subpoena seeks information not relevant to the EEOC's charge; the EEOC "failed" to list specific questions Guerra refused to answer in support of its enforcement action; and Guerra did not refuse the subpoena, rather the EEOC unilaterally canceled the interview.  All of these arguments lack merit and do not preclude enforcement of this subpoena.

### A.   *Relevancy and Materiality*

The EEOC is investigating allegations that Z Foods supervisors sexually harassed, assaulted, and preferenced female employees who engaged in sexual activity with them.  To further its investigation into the "allegations of a pattern and practice of harassment against a *class of women*," the EEOC is examining Z Foods supervisor's relationships with current and former employees at Z Foods, including the charging parties.  As part of the investigation, Mr. Guerra, a supervisor, was asked about his sexual activity with an employee at Z Foods named Elizabeth Ceballos.  The EEOC also inquired about Mr. Guerra's interactions with a number of other Z Foods employees not named in EEOC charges; and asked questions regarding an off-site employee "hangout" where a former Z Foods female employee currently works.

It is entirely appropriate for the EEOC to investigate Guerra's sexual relationships with current and former employees to determine whether Z Foods supervisors engaged in a pattern and practice of sexual harassment.   Not only are these questions *directly relevant* to the charges made against Guerra personally,[5] but the EEOC is entitled to information that "may provide a useful context" for its investigation.  *See generally EEOC v. Kronos Inc.*, 620 F.3d 287, 298 (3d Cir. 2010).   To investigate allegations that women were subject to sexual harassment and/or assault by Z Foods supervisors, a good starting place was to inquire about the specific charges received and about any other current or former employees that engaged in a sexual relationship with the alleged harasser, Mr. Guerra.  This includes a possible sexual relationship with a current employee, Ms. Ceballos, and a former employee now working at an off-site grocery store frequented by Z Foods employees.   The latter employee was specifically mentioned by a third party during the EEOC's investigation and was formerly supervised by Mr. Guerra.  All of these questions are relevant and material to the EEOC's investigation of a possible "pattern" of sexual harassment at Z Foods, *see Shell Oil Co.*, 466 U.S. 54, 69-73 & fn. 26, but were refused on privacy grounds.

Mr. Guerra's responses to these questions will be enforced as to both current and former female employees not named in the EEOC

---

[5]   The questions concerning Z Foods supervisor's sexual interactions are also relevant in light of the charging documents underlying the EEOC's investigation, which alleged harassment and assault against a class of women, young female employees.

charges.[6]   Additionally, the answers to these questions, as presently framed and presented to the Court, have a tendency to prove or disprove the allegations advanced in this case.   The EEOC is *statutorily mandated* to investigate and analyze allegations of sexual discrimination/harassment in the workplace and is given a wide berth to complete this function.[7]   See 42 U.S.C. § 2000e-5(b); *accord EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 n. 38 ("judicial review of early phases of an administrative inquiry results in interference with the proper functioning of the agency and delays resolution of the ultimate question whether the Act was violated.").   In *Occidental Life Ins. Co. v. EEOC*, 432 U.S. at 359, the Supreme Court recognized that "[t]he EEOC is [] required to investigate the charge and determine whether there is reasonable cause to believe that it is true."   Here, if the relationship has a logical connection to the workplace, e.g., if the individual was

---

[6] See Doc. 37 at 5:15-5:18 ("Respondent Guerra shall answer any and all inquiries regarding alleged sexual encounters with and/or harassment of any present or former employees of Zoria regardless of whether said encounters took place on Zoria's property or not.").

[7] The Supreme Court has stated that the judicial inquiry is narrow at the administrative stage because "judicial review of early phases of an administrative inquiry results in interference with the proper functioning of the agency and delays resolution of the ultimate question whether the Act was violated." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 n. 38 (1984) (internal quotation marks and citations omitted).   An earlier Supreme Court decision, *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977), stated that the EEOC is granted wide berth to investigate alleged workplace discrimination because once a charge is filed, "[t]he EEOC is [] required to investigate the charge and determine whether there is reasonable cause to believe that it is true."   These precedents make clear that judicial review of an administrative subpoena must take into account the context in which it arises.

a former employee or the relationship was connected to past employment, it is relevant and material to the EEOC's investigation into an alleged pattern and practice of harassment against a class of women at Z Foods.

The case of *Local 174, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. United States*, 240 F.2d 387 (9th Cir. 1956) does not help Respondent. There, the IRS requested a general search of the papers and documents of the local union, not the individuals being investigated. The Ninth Circuit stated: "There was obviously no attempt to confine the demand to items which might be relevant or material to the taxes of the Brewsters [...] The Union was not itself subject to this investigation [...] It was not here a taxpayer whose books and records were within the jurisdiction of the agency." *Id*. at 391. Here there is no such issue. The individual, Mr. Guerra, has the ability and knowledge to respond to the EEOC's examination questions, without infringing on his corporate position/status (or the corporation itself). Additionally, unlike *Local 174*, this case does not involve a subpoena duces tecum or a demand for taxable transactions. Respondent's cited authority is factually distinguishable.

   B.    *Right to Privacy & "Actual" EEOC Charges*

Respondent rejoins that the EEOC's questioning imposed on Mr. Guerra's privacy rights, recognized in *Griswold v. Connecticut*, 381

14

U.S. 479 (1965) and its progeny.[8]  It is unclear, however, how the penumbral rights recognized in Griswold impact the analysis at the administrative subpoena stage given the EEOC's broad investigative power and, more importantly, that Title VII makes it "unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding" under the Act.  See 42 U.S.C. § 2000e-8(e).  The EEOC is under a statutory mandate not to disclose information it gathers during its investigation;[9]  there is no danger anyone but the EEOC will have access to the information Respondent seeks to protect.

Respondent's argument that the EEOC's investigation is limited to the individuals/allegations named in the *actual EEOC charges* is similarly flawed.  Respondent is correct that the EEOC's investigating authority is closely connected with charges filed with the agency, thus its investigative powers are somewhat narrower than those of other government agencies.  Indeed, a valid

---

[8] It bears noting what this case is not about.  It is undisputed that Mr. Guerra did not assert a Fifth Amendment privilege during the September 2009 interviews.  That constitutional subject, i.e., the assertion of the privilege against self-incrimination, was not raised in the parties' briefing and is not addressed here.

[9] Given that the EEOC is under a statutory mandate not to disclose materials connected to its investigation, it is difficult to understand Respondent's argument that the EEOC is "improperly withholding" the September 3, 2009 interview transcript.  Even if a copy of transcript still exists, which is unclear, Respondent's counsel does not cite any legal authority to abrogate 42 U.S.C. § 2000e-8(e) in favor of disclosure.  It is also unclear if Respondent has requested this information pursuant to the Freedom of Information Act ("FOIA").

charge is a jurisdictional prerequisite to the Commission's issuing a valid subpoena.  Still, the EEOC's investigative powers have been construed broadly, and "courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. at 64-65, 68-69.  In addition, "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the Charging Party's complaint are actionable." *General Telephone v. EEOC*, 446 U.S. 318, 331 (1980).

On similar arguments, *EEOC v. McCormick & Schmick's*, No. C-07-80065-WHA, 2007 WL 1430004 (N.D. Cal. May 15, 2007), rejected Respondent's position that the EEOC's administrative subpoena sought irrelevant information.  In particular, Respondent argued that the subpoena was limited to the "three positions" listed in the actual charge.  The Court disagreed:

> The Commissioner's charge makes clear that the EEOC is investigating respondent's hiring practices in front-of-the-house positions.  The three specific positions in the charge are listed by way of example, not by way of limitation.  Accordingly, limiting the subpoena to only those three positions is not warranted.  The EEOC is entitled to receive employment data for all front-of-the-house positions other than busperson.  The Commissioner did not choose to limit the investigation to those specific positions, so the subpoena will not be construed in that manner.

> Respondent further argues that the subpoena should be restricted to only non-management or hourly employees.  Again, respondent's contention is based on an overly cramped reading of the Commissioner's charge.  It alleges discrimination for all front-of-the-house positions.  Furthermore, de Carvalho, a former front-of-the-house manager, alleged that respondent retaliated against him for his opposition to racial discrimination taking place at respondent's restaurants.  *Thus, the production of such information is appropriate.  The subpoena will not be limited to hourly positions, and respondent will be required to turn over employment data for front-of-the-house management positions*.

*Id*. at 6 (emphasis added).

This language applies with equal force to the present facts because *McCormick & Schmick*, like this case, analyzed whether an administrative subpoena could be restricted to the positions and subject matter in the *actual charges*. Even if, *arguendo*, Respondent's position was legally sound, the EEOC's August 26, 2009 letter to Mr. Sagaser clarifies the scope and target of the inquiry: the "investigation pertain[s] to allegations of egregious sexual harassment, including, not limited to, sexual assault and rape, which occurred at Z Foods' Madera, California worksite, by at least one Z Foods employee during time periods both before and after Z Foods/Rustic Canyon Fontis Partners took over operations at the site." (Doc. 5-3, pg. 1.[10]) Respondent and Mr. Guerra were on clear notice that the EEOC sought to investigate allegations of sexual harassment and related misconduct by supervisory employees at Z Foods, including and specifically Mr. Guerra.

C.   *Cancellation of Interview, Advance Interview Questions,*
     *Evidentiary Objections and Scope of Legal Representation*

Respondent next argues that the subpoena cannot be enforced because the interview was unilaterally cancelled by the EEOC. The record makes clear, however, that the September 11, 2009 interview was cancelled due to Respondent's counsel's insistence on asserting

---

[10] The actual EEOC charges filed by current or former Z Foods employees also provide expansive notice of the allegations against Respondent. (See Docs. 5-1 & 5-2.) Respondent does not accurately characterize these documents, which allege sexual, gender, race and age discrimination.

privacy objections, not because the interview was completed. Respondent cites no legal authority, and the Court has found none, holding that an administrative agency must continue to notice and hold interviews if there is a complete breakdown of purpose and dialogue in the information gathering context.  Rather, the legal avenue to address such circumstances is to file a motion to enforce the subpoena in the district court, which was done here.

There is a similar lack of legal precedent to require the EEOC to transmit the interview questions to opposing counsel *before the interview*.  If there is any authority for such a mandate, it was not cited in Respondent's brief.  An interviewer cannot anticipate in advance any and all questions they might ask;  even if, *arguendo*, they could, it is likely that most, if not all, of the questions are protected work product.  *See generally* Fed. R. Civ. Proc. 26(b)(1)-(3); *see also Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003)("the work product doctrine is intended [] to guard against the divulging of attorney's strategies and legal impressions.").

Respondent's arguments concerning its evidentiary objections and the scope of Mr. Sagaser's legal representation were adequately addressed by the Magistrate Judge in the October 28, 2010 Order. That Order provides, in relevant part:

> [1.] The Court views the bulk of Zoria's objections to the application to the OSC to be argument on the merits should a complaint against the named respondents be filed.  This matter is administratively and statutorily at the investigation stage [...]

> [2.] Critical to the Court's reconsideration is the sentence contained in Attorney Sagaser's email of January 4, 2010 to Elizabeth Esparza-Cervantes (Exhibit H to objections, Doc. 11): 'I only represent Francisco Guerra to the extent he is a supervisor of Z Foods.  I

1
2
3
4
5

> do not represent him as an individual and have not been
> retained by him with respect to the subpoena enforcement
> action initiated by the EEOC.'   While Mr. Sagaser
> seemingly was in a position to advise Mr. Guerra about
> his/Sagaser's concerns with the questions posed, without
> more information it appears to this Court that Mr.
> Sagaser might well have placed himself in a position of
> conflict.

6   (Doc. 37 at 4:10-4:28.)

7        At this stage of the case, the Magistrate Judge's analysis is

8   sufficient, however, Mr. Sagaser is requested to provide a clear

9   statement of the scope and status of his representation.   As

10  explained by the Court during oral argument, Mr. Guerra, a

11  current/former Z Foods employee, is entitled to unconflicted legal

12  counsel during the EEOC's investigation into sexual harassment at

13  Z Foods, particularly if the investigation involves activity or

14  conduct that could impose liability against the employer, here Z

15  Foods;  or if there is an assertion that the conduct is outside the

16  course and scope of employment.

17       The portion of the Magistrate Judge's Order excluding

18  Respondent's counsel from further investigatory interviews is not

19  supported by the record and is premature.   The exclusion of counsel

20  from all investigatory proceedings is tantamount to a

21  disqualification.   In this Circuit, "Courts [] approach the issue

22  of whether to disqualify opposing counsel as 'a drastic measure

23  which courts should hesitate to impose except when absolutely

24  necessary.'"   *Hacket v. Feeney*, No. 2:09-cv-02075-RLH-LRL, 2010 WL

25  4102911, at 3 (D. Nev. Oct. 18, 2010)(citing *Optyl Eyewear Fashion*

26  *Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.

27  1985).   Mindful of the EEOC's claim of obstructionist behavior, the

28  Court finds that the disqualification standard applicable to

district courts has not been satisfied.  Any additional concerns in this context can be addressed by the special master, if one is appointed,[11] or pursuant to a motion filed in this Court.

### D.   *Special Master*

At oral argument, the parties requested that the Court appoint a special master to oversee their "investigatory" disputes.  The Court agrees that appointing a special master will assist in effectively and expeditiously resolving the parties' dispute, specifically, the objections raised by Respondent's counsel during the interviews of Z Foods employees.  For the reasons stated at the hearing and based on the parties' representations, the Court finds that there is a need for a special master in this case.  It was, however, represented at oral argument that Mr. Guerra currently resides in Mexico, beyond the subpoena power of the district court. The parties are invited to make recommendations concerning the identity of the special master when and if the EEOC is able to obtain jurisdiction over Mr. Guerra.[12]

### E.   *Conclusion on the Merits*

As the EEOC has met its burden of relevance and materiality, *see EEOC v. Federal Exp. Corp.*, 558 F.3d 842, 844-45 (9th Cir. 2009), the burden shifts to the respondent to prove that the

---

[11] The appointment of a special master, discussed *infra*, likely abrogates the Magistrate Judge's ruling that Respondent's counsel is excluded from further investigatory interviews.

[12] The EEOC represented during oral arguments that it would immediately serve a subpoena on Mr. Guerra to confirm that he is within the jurisdiction of the agency.

subpoena is overbroad or unduly burdensome. It has not done so. Respondent does not contend that, *e.g.*, compliance places a considerable financial or technological burden on Respondents or seriously threatens to disrupt or hinder the normal operation of a business. *See generally EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993). There are no facts/arguments to establish an undue burden under the relevant legal framework. Courts have held that parties subject to such investigatory subpoenas should expect to "lose some time and money complying with the administrative subpoena" and "respondent cannot expect compliance to be painless." *McCormick & Schmick's*, 2007 WL 1430004, at 7.

Respondent's motion is GRANTED only to the extent specifically described in this Memorandum Decision, otherwise, the motion is DENIED. Respondent has failed to show how the Magistrate Judge's order is either contrary to law or clearly erroneous.

## V. <u>CONCLUSION</u>.

For the reasons stated:

1. Respondent's motion for reconsideration of the October 28, 2010 Order is GRANTED only to the extent specifically described in this Memorandum Decision, otherwise, the motion is DENIED;

2. For the reasons stated at the hearing and based on the parties' representations, the Court finds that there is a need for a special master in this case. The parties are invited to make recommendations concerning the

1       identity of the special master when and if the EEOC is
2       able to obtain jurisdiction over Mr. Guerra, and to
3       propose the terms and conditions of services by the
4       special master.

6   3.  Respondent's counsel is requested to provide a clear
7       statement of the scope of his representation by March 15,
8       2010.

10  4.  The EEOC is requested to provide a status update on the
11      status of service of an administrative subpoena on Mr.
12      Guerra.

14      Respondent shall submit a form of order consistent with, and
15  within five (5) days following electronic service of, this
16  Memorandum Decision.

18      IT IS SO ORDERED.

19      Dated:   February 22, 2011            /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

**22**